IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT BATTISTE,

        Plaintiff,                              11cv1096

                                                  **ELECTRONICALLY FILED**

        v.

ARBORS MANAGEMENT,
et al.,

        Defendants.

## MEMORANDUM OPINION

This is a civil RICO action. Plaintiff, Albert Battiste, sued Defendants, Arbors Management, EQT Investments, and numerous individuals each of whom were or are owners, officers, and/ or partners, in Arbors Management or EQT Investments or both. See doc. no. 1. Count I of Plaintiff's Complaint alleges Defendants engaged in a pattern of racketeering from November of 2006 until August of 2007 which caused Plaintiff to sustain financial losses with respect to his rental properties. *Id.* Pursuant to the Local Rules of Civil Procedure, LCvR 7.1, Plaintiff also filed a RICO Case Statement providing details concerning his RICO claim. See doc. no. 4.

In response to the Complaint, Defendants filed a Motion to Dismiss and a Brief in Support of same pursuant to Fed.R.Civ.P. 12(b)(6) arguing that Plaintiff's Complaint failed to allege sufficient facts to support a plausible RICO claim. See doc. nos. 21and 22. Plaintiff timely filed a Brief in Opposition to Defendants' Motion to Dismiss. See doc. no. 23. The matter is now ripe for disposition.

**I. STANDARD OF REVIEW**

In considering a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the …claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a Motion to Dismiss, a party must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly* 550 U.S. at 570); see also *Kolar v. Preferred Real Estate Investments, Inc.*, 361 Fed.Appx. 354, 359, fn 5 (3d Cir. 2010) ("So long as the complaint sets forth a "plausible" claim to relief, defendants' motion to dismiss must fail.").

A claim has facial plausibility when a party pleads facts that allow the Court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. *Ashcroft,* 129 S.Ct. at 1949. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1950 (quoting *Twombly* 550 U.S. at 555). In deciding a Motion to Dismiss, the Court must determine whether the Complaint or Answer "pleads factual content that allows the court to draw the reasonable inference that the defendant (or plaintiff) is liable for the misconduct alleged." *Pennsyl. Prison Soc. v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010) (citing *Iqbal*, 129 S.Ct. at 1949). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.*; *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11.

As recently discussed by the United States Court of Appeals for the Third Circuit, a District Court must take three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1947 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth.' *Id*. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' *Id*. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

When determining whether a party has presented facts sufficient to show a "plausible claim for relief," the Court must consider the specific nature of the claim presented and the facts pled to substantial that claim. For example, in *Fowler*, a case predicated upon a violation of the Rehabilitation Act, the Court of Appeals determined that "[t]he complaint pleads how, when, and where [the defendant] allegedly discriminated against Fowler." 578 F.3d at 212. The Court, while noting that the Complaint was "not as rich with detail as some might prefer," the "how, when, and where" provided by the plaintiff was sufficient to establish plausibility. *Id*. at 211-12.

The facts alleged in the Complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. The Court may not dismiss a Complaint or Counterclaim merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Id*. at 556, 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id*. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212; *See Guirguis v. Movers Specialty Services, Inc.*, 346 Fed.Appx. 774, 776 (3d Cir. 2009).

In short, the Motion to Dismiss should not be granted if a party alleges facts which could, if established at trial, entitle him to relief. *Id.* at 563 n.8.

## II. BACKGROUND

Plaintiff's Complaint contains three causes of action, the first of which alleges that Defendants engaged in racketeering activity in violation of 18 U.S.C.A. § 1962.[1] See doc. no. 1, generally. The Complaint specifically suggests that Defendants engaged in acts of mail fraud (*id.* at ¶¶ 18-23), money laundering (*id.* at ¶¶ 24-29), and tax evasion (*id.* at ¶¶ 30-33). All factual allegations in the Complaint are herein assumed to be true for purposes of adjudicating Defendant's Motion to Dismiss.

According to the Complaint, Plaintiff was the title owner of rental properties subject to at least one mortgage. See doc. no. 1, generally. Some time prior to 2003, Plaintiff obtained second mortgages on these rental properties from Defendants. See *id.* at ¶¶ 19-23.[2] The Complaint specifically states that in 2003, Plaintiff paid off "the mortgages in question" (presumably the second mortgages owed to Defendants on the subject properties) by refinancing the debt(s) through Irwin Bank (now known as S&T Bank). *Id.* at ¶ 22. Plaintiff claims that despite the fact that he paid off the second mortgages in 2003, Allegheny County's public records failed to reflect such a pay-off. *Id.* at ¶ 19.

In November of 2006, one of the individual defendants (who is now deceased) conspired with the other Defendants "to defraud Plaintiff of rents due and owing to him and ultimately his

---

[1] The remaining two causes of action are both state-based claims: "intentional interference with contractual relations" (*id.* at ¶¶ 34-38) and "intentional infliction of emotional distress" (*id.* at ¶¶ 39-41).

[2] The Court notes that the Complaint does not explicitly state that Plaintiff was the title owner of rental properties, nor does it explicitly state that Plaintiff obtained second mortgages on "his" rental properties from Defendants. However, based on the totality of the factual allegations in the Complaint, this Court believes its presumptions to be correct and these facts can be readily inferred.

rental properties." *Id.* at ¶ 18.  To achieve this goal, in 2006, Defendants sent letters to Plaintiff's tenants "demanding that they forward their rents to [Defendant Arbors Management]. *Id*. at ¶ 19.  Plaintiff alleges that Defendants took this action relying upon an "assignment of rents" clause found in the second mortgage agreements with Plaintiff.  *Id.*  Plaintiff alleges that Defendants "sole intention was to collect as much rent as possible, pay little or nothing to the first mortgage holder [Irwin or S&T Bank], falsify the rent rolls, misreport the income to the IRS, and pocket the profit." *Id*. at ¶ 22.  Plaintiff further alleges that Defendants' letters to his tenants demanding their rent be sent to Defendant Arbors Management was done "to cause Plaintiff to default on his first mortgage obligations so that all Defendants could . . . acquir[e] Plaintiff's properties for only the balance due on the first mortgage instead of the properties fair market value." *Id.* at ¶ 20.

Plaintiff claims that these "knowingly false letters" caused tenants to mail their checks to Defendant Arbors Management, and as a result, Arbors Management collected over $190,000.00 in rent from Plaintiff's tenants during the time period in question.  *Id.* at ¶¶ 24-25.  During the same time period, Defendants: (1) placed only half of the rents collected ($190,000.00) "onto . . . falsified rent rolls[,]" (2) paid nothing to the first mortgage holder (Irwin or S&T Bank), (3) paid few expenses, and (4) "pocketed" the remaining funds.  *Id*. at ¶¶ 25-29.

Lastly, Plaintiff alleges that Defendant Arbors Management prepared a false IRS form 1099 which under-reported the rents collected from January of 2007 through August of 2007.  *Id.* at ¶¶ 30-31.  This enabled Defendants to evade taxation on $40,000.00 to $50,000.00 in rental income.  *Id*. at 31-32.

**III.   DISCUSSION**

"RICO, the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961-68 (1984 & Supp. 1990), authorizes civil suits by '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].'" *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 609 (3d Cir. 1991), quoting 18 U.S.C. § 1964(c).  The United States Court of Appeals for the Third Circuit has explained:

> There are four basic elements that a plaintiff must establish to prove any civil RICO action: (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO enterprise; and (4) resulting injury to the plaintiff's business or property.

*Kolar v. Preferred Real Estate Investments, Inc.*, 361 Fed.Appx. 354, 359 (3d Cir. 2010) (citation omitted).  When a Plaintiff alleges predicate acts based on fraud, the RICO claim must be stated with particularity. *Id.,* citing Fed.R.Civ.P. 9.

The second *Kolar* element – the existence of a pattern of racketeering activity – requires further definition.  *See Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir.1995) (en banc) ("A common thread running throughout § 1962 is that an injured party must demonstrate that the defendant was engaged in a pattern of racketeering activity.").  A "pattern of racketeering activity requires the commission of 'at least two acts of racketeering activity.'" *Hughes*, 945 F.2d at 609 quoting 18 U.S.C. § 1961(5).  These so-called "predicate acts" must: (1) be related and (2) pose a threat of continued criminal activity.  *H.J. Inc. v. Northwestern Tel. Co.*, 492 U.S. 229, 239 (1989);

In *H.J. Inc.,* the United States Supreme Court explained that predicate acts meet the first prong of the test if they are "related" when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240.  With respect to the second prong –

6

whether the predicate acts pose a threat of continued criminal activity – the Supreme Court noted that "continuity" would be interpreted differently depending on whether a plaintiff alleges a RICO violation over a closed period of time (a "closed-ended" scheme), or an open-ended period of time (an "open-ended" scheme). *Id*. at 241.  The Court specifically held that if a plaintiff alleges that the predicate acts occurred within a closed period of time, the plaintiff must prove that the series of related predicates lasted a "substantial period of time." *Id.* at 242.  Although the Court in *H.J. Inc.* did not expressly quantify what it meant by a "substantial period of time," the Court did state that, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement: Congress was concerned in RICO with long-term criminal conduct." *Id*.

In *Hindes v. Castle*, 937 F.2d 868, 873 (3d Cir. 1991), the Court of Appeals for the Third Circuit noted that in the wake of the *H.J. Inc.* case, it had endeavored to stress that "duration is the *sine qua non* of continuity."  In *Hindes,* the Court of Appeals for the Third Circuit specifically held that the "only post *H.J. Inc.* cases in which we found the continuity requirement to be satisfied [were those where] there was the threat of continuing RICO activity." *Id*.

The Court in *Hindes* examined one of its older decisions, *Kehr Packages, Inc. v. Fidelcor,* Inc., 926 F.2d 1406, 1418 (3d Cir. 1991), and noted that it held that predicate acts lasting over an eight-month period undertaken in order to defraud a single entity and threatening no future criminal activity failed to satisfy continuity requirement.  Similarly, in *Hughes*, *supra*., although declining to set forth a "a litmus test" to measure duration, the Court of Appeals held that "there was no qualitative difference between eight and twelve months for the purposes of RICO continuity" and thus found the plaintiff's RICO claim lacking.  *Hughes,* 945 F.2d at 611.

7

Importantly, in both *Kehr* and *Hughes,* there were no indications that the respective plaintiffs had any evidence of an open-ended scheme suggesting a threat of future continuing criminal activity.

Turning to the instant matter, Plaintiff's Complaint clearly alleges a closed-ended scheme.  As noted above, Plaintiff alleges that the predicate acts took place between November 1, 2006 and August of 2007.  Doc. no. 1 at ¶¶ 16, 17, 21.  Although the Complaint alleges, "Defendants have had the use and benefit of the ill-gotten gains to continue the activities and enrich the individual defendants[,]" there are no allegations that indicate what additional or continued criminal acts/activities extended beyond August of 2007.  *Id.* at ¶ 32.  This Court finds that continued financial gains which allegedly flowed from the closed period predicate acts are not sufficient to create an open-ended scheme.  Thus, there are no allegations that describe any continued acts, required to establish an open-ended scheme, nor are there any allegations that suggest or describe a threat of future or on-going criminal activity.  Therefore, as pled, Plaintiff only has a plausible RICO claim if the November of 2006 to August of 2007 time span equates "a substantial period of time."

Based on case law emanating from the United States Court of Appeals for the Third Circuit, specifically *Kehr, Hughes,* and *Hindes,* this ten-month period of time alleged by Plaintiff falls short of meeting the definition of a "substantial period of time."  Because Plaintiff's closed-ended scheme is too short in duration to constitute a substantial period of time, and because no facts pled by Plaintiff allege an open-ended scheme, his Complaint cannot plausibly assert a RICO claim.  Therefore, given these deficiencies the RICO claim will be dismissed.[3]

---

[3] This Court declines to exercise supplemental jurisdiction over the two remaining state law claims.  The state courts are intimately familiar and regularly adjudicate claims of this nature. Accordingly, said state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiffs' ability to refile these claims in state court.  Also, the dismissal of Plaintiffs' state law claims should not work to Plaintiffs' disadvantage.  See 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed so as to allow Plaintiffs time to refile their state law claims in state court).

**IV. CONCLUSION**

Based on the foregoing law an authority, the Defendants' Motion to Dismiss Plaintiff's Complaint is granted.  The two remaining state law claims asserted against Defendants will be remanded to State Court.  An appropriate Order follows.

s/   Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record